# No. 25-977

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ASSOCIATION OF CONTRACTING PLUMBERS
OF THE CITY OF NEW YORK, INC., *et al.*,
PLAINTIFFS-APPELLANTS,

v.

CITY OF NEW YORK,
DEFENDANT-APPELLEE.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR THE DISTRICT OF COLUMBIA, COLORADO, CONNECTICUT, HAWAII, ILLINOIS, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, OREGON, VERMONT, MONTGOMERY COUNTY, AND THE VILLAGE OF OAK PARK AS AMICI CURIAE IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ADAM J. TUETKEN
BRYAN J. LEITCH
Assistant Attorneys General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 442-9807
ashwin.phatak@dc.gov

# TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI ..................................................... 1

BACKGROUND ................................................................................................. 2

SUMMARY OF ARGUMENT ............................................................................ 5

ARGUMENT ...................................................................................................... 6

    I.     EPCA Has Long Been Understood To Preempt Only A Narrow Range Of State And Local Laws ........................................................... 6

          A.     The federal government, states, and localities have collectively understood that EPCA preempts only laws that target products' energy performance ................................... 6

          B.     EPCA and related federal laws support a variety of state energy policies, including policies like the City's ..................... 8

    II.    Plaintiffs' Interpretation Is Wrong And Would Upset The Settled Understanding Of EPCA Preemption .................................................. 12

    III.   Upsetting The Understanding Of EPCA Would Have Severe Consequences For States And Localities ........................................... 21

          A.     Plaintiffs' interpretation would threaten to preempt a startling swath of laws ............................................................. 21

          B.     Plaintiffs' interpretation lacks clear, administrable rules that states and localities need ................................................... 25

CONCLUSION ................................................................................................. 28

i

# TABLE OF AUTHORITIES

## *Cases*

*Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758 (2021) ............................................. 20

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   576 U.S. 787 (2015).......................................................................... 19

*Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105 (2d Cir. 2021) ..... 25

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005).......................................... 18

*Biden v. Nebraska*, 600 U.S. 477 (2023) ......................................................... 19, 20

*Bond v. United States*, 572 U.S. 844 (2014) ........................................................ 25

*Buono v. Tyco Fire Prods., LP*, 78 F.4th 490 (2d Cir. 2023) ................................. 14

*Cable Television Ass'n of N.Y. v. Finneran*, 954 F.2d 91 (2d Cir. 1992).............. 15

*Coal. for Competitive Elec. v. Zibelman*, 906 F.3d 41 (2d Cir. 2018) ................... 11

*Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1 (1st Cir. 2022).......................... 15

*Corley v. DOJ*, 998 F.3d 981 (D.C. Cir. 2021)....................................................... 14

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) ....................................................... 11

*Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013).................................. 25

*Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149 (2018)........................................ 12

*Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48 (2d Cir. 2006)...................... 25

*Dubin v. United States*, 599 U.S. 110 (2023) ........................................................ 15

*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016) ......................................... 26

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)............................................................... 1

*Haig v. Agee*, 453 U.S. 280 (1981) .......................................................................... 7

*Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440 (1960) ...................... 1

*In re Pittsburgh & Lake Erie Props., Inc.*, 290 F.3d 516 (3d Cir. 2002) .............. 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    34 F.4th 1 (D.C. Cir. 2022) .................................................... 14, 16

*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005) .......................... 16

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ................................ 21

*Krasner v. Cedar Realty Tr., Inc.*, 86 F.4th 522 (2d Cir. 2023) ........................ 17

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) .......................... 25

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ...................................... 1

*Melillo v. Brais*,
    No. 3:17-cv-520, 2019 WL 1118091 (D. Conn. Mar. 11, 2019) ...................... 23

*Mellouli v. Lynch*, 575 U.S. 798 (2015) ............................................ 13, 17

*Monsalvo v. Bondi*, 145 S. Ct. 1232 (2025) .................................... 7, 8

*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) .................................. 21

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ........................................................ 11

*N.Y. State Telecomms. Ass'n v. James*, 101 F.4th 135 (2d Cir. 2024) ................... 20

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) .............................................. 8

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) .................................. 1

*Pennell v. City of San Jose*, 485 U.S. 1 (1988) .................................... 1

*Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80 (2020) ........................ 26

*Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693 (D.C. Cir. 2024) ........................ 15

*United States v. Halseth*, 342 U.S. 277 (1952) ...................................................... 16

*United States v. Miller*, 604 U.S. 518 (2025) ..................................................... 12

*United States v. Omotayo*, 132 F.4th 181 (2d Cir. 2025) ....................................... 17

*Wash. Gas Light Co. v. Prince George's Cnty. Council,*
    711 F.3d 412 (4th Cir. 2013) ............................................................... 23

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................................14, 17

### Statutes and Regulations

42 U.S.C. § 6201 ..................................................................................... 2

42 U.S.C. § 6291(4) ..................................................................... 3, 12, 13

42 U.S.C. § 6291(6)(A) ................................................................... 3, 4

42 U.S.C. § 6292(a)(9) ................................................................... 21

42 U.S.C. § 6292(a)(14) ................................................................. 22

42 U.S.C. § 6293(b)(3) .......................................................... 3, 4, 12, 13

42 U.S.C. § 6295(a) ....................................................................... 2

42 U.S.C. § 6297(c) ................................................................... 3, 4

42 U.S.C. § 6297(g) ....................................................................... 3

42 U.S.C. § 6311 ........................................................................... 3

42 U.S.C. §§ 6321-6325 ............................................................... 9

42 U.S.C. § 6321(c)(7)(A) ........................................................... 10

42 U.S.C. § 6322(d)(8) ................................................................. 9

42 U.S.C. § 6322(d)(14) ............................................................... 9

42 U.S.C. § 6323(e) ..................................................................... 10

iv

42 U.S.C. § 6325(e) ................................................................. 9

42 U.S.C. §§ 6371-6371k, 6372-6372i ...................................... 10

42 U.S.C. § 6831(4) ............................................................... 10

42 U.S.C. § 6833 .................................................................. 10

42 U.S.C. § 6836 .................................................................. 10

42 U.S.C. § 6838 .................................................................. 10

49 U.S.C. § 32919(a) ............................................................. 15

Cal. Health & Safety Code § 19881(a) ...................................... 21

425 Ill. Comp. Stat. Ann. § 65/8 ............................................. 21

425 Ill. Comp. Stat. Ann. § 65/9 ............................................. 21

L.A. Mun. Code § 57.603.10.2 ................................................ 22

Minn. Stat. § 116.92(7b) ........................................................ 22

N.Y. Real Prop. Law § 239-e .................................................. 21

R.I. Gen. Laws § 23-24.9-2 .................................................... 22

R.I. Gen. Laws § 23-24.9-6.1 ................................................. 22

Tucson Code of Ordinances § 27-95(4) .................................... 22

10 C.F.R. § 430.2 ........................................................... 21, 22

10 C.F.R. § 430.32(c) ............................................................ 19

10 C.F.R. § 430.32(d) ........................................................... 19

10 C.F.R. § 430.32(j) ............................................................ 19

N.Y.C. Admin. Code § 24-177.1 ............................................... 4

Ohio Admin. Code § 3341-2-15(F)(4) ..................................................22

*Legislative History*

D.C. Council Comm. on Transp. & Env't, *B24-420, the "Clean Energy DC Building Code Amendment Act of 2022"* (June 13, 2022) ............................... 24

H.R. Rep. No. 100-11 (1987) ............................................................. 7, 18

S. Rep. No. 100-6 (1987) ....................................................................7

*Other*

*The American Heritage College Dictionary* (3d ed. 1993) ..................................... 14

Br. for the U.S. & FTC, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, Nos. 21-7093, 21-7095 (D.C. Cir. Dec. 22, 2021), 2021 WL 6091019 ........... 15

Br. for the U.S., *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. Feb. 2, 2022), ECF No. 33, 2022 WL 433159 .............................................. 8, 19

Br. for the U.S. in Supp. of Pet. for Reh'g, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94 .............................. 8, 18, 20

Def.'s Mem. of L. in Supp. of Mot. to Dismiss, *Hess v. Samsung Elecs. Am., Inc.*, 3:23-cv-50106 (N.D. Ill. June 5, 2023), ECF No. 19 ............................... 23

Energy Conservation Standards for New Buildings Act, Pub. L. No. 94-385, § 310, 90 Stat. 1125, 1149 (1976) ....................................................... 10

Energy Policy and Conservation Act, Pub. L. No. 94-163, § 361(a)(1), 89 Stat. 871, 932 (1975) ......................................................................... 9

FDNY Found., *Don't Use Kerosene or Propane Space Heaters* .......................... 22

Federal Rule of Appellate Procedure 29(a)(2) ......................................... 1

Gov. Jared Polis, *Colorado Greenhouse Pollution Reduction Roadmap* (Jan. 14, 2021) ........................................................................ 24

David Iaconangelo, *Washington State Hits the Brakes on Landmark Gas Ban*, E&E News (May 25, 2023) ...................................................... 27

Inflation Reduction Act, Pub. L. No. 117-169, §§ 50131(a)(2), (c)(1), 136 Stat. 1818, 2042 (2022) ....................................................................... 11

Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, *Sherzai v. LG Elecs. USA, Inc.*, No. 2:23-cv-429 (E.D. Cal. May 12, 2023), ECF No. 14-1 ............. 23

National Appliance Energy Conservation Act, Pub. L. No. 100-12, 101 Stat. 103 (1987) ........................................................................................... 7

National Energy Conservation and Policy Act, Pub. L. No. 95-619, § 102(a)(3), 92 Stat. 3206, 3209 (1978) ............................................. 9

*The Random House Dictionary of the English Language* (2d ed. 1987) ............... 14

Brady Seals & Leah Louis-Prescott, *Uncovering the Deadly Toll of Air Pollution From Buildings*, RMI (May 5, 2021) ................................................ 24

Susannah Shoemaker, *NREL Researchers Reveal How Buildings Across United States Do—and Could—Use Energy*, Nat'l Renewable Energy Lab. (Sept. 14, 2023) ...................................................................................... 24

U.S. Dep't of Energy, *Small Space Heaters* ........................................................ 22

U.S.'s Statement of Interest, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-cv-3024 (D. Md. Jan. 17, 2025), ECF No. 30.... 8, 11, 15, 18, 19

Vt. Dep't of Envtl. Conserv., *10 VSA §7152(a) Sale of Mercury-Containing Lamps Final Determination Notice* ............................................................. 22

*Webster's Ninth New Collegiate Dictionary* (1985) ............................................. 14

*Zero*, Merriam-Webster Dictionary ..................................................................... 13

47 Fed. Reg. 14424 (Apr. 2, 1982) ....................................................................... 6

47 Fed. Reg. 57198 (Dec. 22, 1982) ..................................................................... 6

71 Fed. Reg. 12634 (Mar. 13, 2006) ..................................................................... 8

75 Fed. Reg. 59470 (Sept. 27, 2010) ................................................................ 8, 17

89 Fed. Reg. 28856 (Apr. 19, 2024) ..................................................................... 8

vii

85 Fed. Reg. 30878 (May 21, 2020) ......................................................................... 8

## INTRODUCTION AND INTEREST OF AMICI

The District of Columbia and the states of Colorado, Connecticut, Hawaii, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, Oregon, and Vermont and the municipalities of Montgomery County, Maryland, and the Village of Oak Park, Illinois ("Amici") file this brief as amici curiae in support of Defendant-Appellee the City of New York ("the City") and affirmance, pursuant to Federal Rule of Appellate Procedure 29(a)(2).[1]

Our federalist system leaves most policymaking powers to states and localities, as they are closest to the people. *Gregory v. Ashcroft*, 501 U.S. 452, 457-58 (1991). That includes the powers to protect the health and safety of their residents, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996), enact building codes, *Pennell v. City of San Jose*, 485 U.S. 1, 12 (1988), minimize air pollution, *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442 (1960), and regulate gas distribution, *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 378 (2015). Pursuant to these powers, Amici have enacted building energy codes, fostered reliance on renewable energy, and restricted unsafe products. All the while, Amici have complied with federal law, which has supported—not stymied—those efforts.

---

[1]     Amici received Plaintiffs' consent to file this brief. No party's counsel authored any part of this brief, nor did anyone contribute money to fund its preparation or submission.

Plaintiffs' theories would needlessly curtail these traditional powers without a clear congressional mandate. Plaintiffs allege that the Energy Policy and Conservation Act (EPCA), 42 U.S.C. § 6201 *et seq.*, preempts the New York City Building Electrification Law, Local Law No. 154 (2021), which generally prohibits the combustion of fossil fuels in new residential buildings. EPCA, however, sets performance standards that appliance manufacturers must meet when designing certain products. Through a narrow preemption provision, EPCA prevents states from imposing their own performance standards on manufacturers. The City's law sets no such standards, whether directly or indirectly. So the law is not preempted, as the district court correctly held.

To argue otherwise, Plaintiffs stretch EPCA far beyond its text and purpose. They not only invent a "federal right" to use gas appliances, but they further reimagine EPCA to make "energy policy" a "national issue" that only the Department of Energy (DOE) can regulate. Pls.' Br. 2. Plaintiffs' interpretation contradicts the entrenched understanding of EPCA and would upend settled expectations—with severe consequences for states and localities. This Court should reject that theory and affirm.

## BACKGROUND

EPCA preemption is straightforward. As relevant here, the statute or DOE establish "energy conservation standards" for products covered by EPCA. 42 U.S.C.

§ 6295(a).[2]  An "energy conservation standard" is "a performance standard which prescribes . . . a maximum quantity of energy use . . . for a covered product, determined in accordance with test procedures prescribed under section 6293." *Id.* § 6291(6)(A).  "[E]nergy use" means "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293." *Id.* § 6291(4).  And Section 6293's test procedures measure the "energy use" of "a covered product during a representative average use cycle or period of use." *Id.* § 6293(b)(3).  EPCA thus defines "energy use" as a fixed, premarket, representative measure of how much energy a product typically consumes, measured under controlled test conditions—not how much energy a product actually consumes when a consumer operates it.  J.A. 88-90; City Br. 19-20; *see* 42 U.S.C. § 6297(g) (recognizing distinction between "energy use" and the consumption of energy "under conditions of actual use").

EPCA then provides a "[g]eneral rule of preemption for energy conservation standards when [a] Federal standard becomes effective for [a] product."  42 U.S.C. § 6297(c).  That rule states in relevant part: "on the effective date of an energy conservation standard . . . , no State regulation concerning the . . . energy use . . . of

---

[2]      EPCA applies similar, and often identical, policies to industrial equipment. *See, e.g.*, 42 U.S.C. § 6311.  This brief will refer to EPCA's consumer provisions, but the same interpretations apply to the corresponding industrial provisions.

such covered product shall be effective with respect to such product." *Id.* Applying EPCA's definition of "energy use," a "regulation concern[s]" the "energy use" of a "covered product" when it concerns the typical quantity of energy a product is designed to consume under carefully prescribed testing conditions. *Id.* §§ 6293(b)(3), 6297(c). The prime example would be a state energy conservation standard establishing a product's "maximum quantity of energy use" as "determined in accordance with [DOE] test procedures." *Id.* § 6291(6)(A). The statute otherwise does not preempt state and local regulations unless they concern the "energy use" of a covered product as defined by EPCA.

Accordingly, the district court here held that the City's law is not preempted. J.A. 87. That law generally prohibits "the combustion of any substance that emits 25 kilograms or more of carbon dioxide per million British thermal units of energy"—i.e., fossil fuels—in certain new buildings and subject to certain exceptions. N.Y.C. Admin. Code § 24-177.1. The district court explained that the law is not preempted because it "does not draw any distinction between products based on their . . . energy use as manufactured" and as defined by EPCA. J.A. 92. The law instead regulates, indirectly, what type of fuel can be used in certain new buildings. J.A. 92-93. In short, the City's law does not concern EPCA's defined concept of "energy use." J.A. 87-93.

## SUMMARY OF ARGUMENT

1. Based on repeated guidance from DOE, states and localities have long understood EPCA to preempt laws that regulate the energy performance of EPCA-covered products. Consistent with that understanding, federal energy laws encourage states and localities to adopt all manner of energy policies other than appliance performance standards, including building codes that—like the City's—transition buildings away from reliance on fossil fuels.

2. Plaintiffs' interpretation would overturn this understanding. If adopted, EPCA would be transformed from a shield protecting product manufacturers from conflicting performance standards into a sword for anyone to invalidate potentially any law affecting appliances' usage or availability. Until recently, no one has misunderstood EPCA that way. And although the United States now joins in Plaintiffs' misconstruction, the United States' interpretation contradicts EPCA's text, the United States' prior positions, and fundamental limits on federal agencies' power.

3. Plaintiffs' interpretation, taken to its limit, could also have severe consequences for states and localities. The laws that could be swallowed by Plaintiffs' sweeping preemption theory could run the gamut from college dorm rules to zoning plans. And Plaintiffs' interpretation leaves states and localities with no concrete standard for understanding what is and is not preempted, frustrating their

ability to respond to the needs of their local constituencies in the way our federal system envisions.

## ARGUMENT

## I.    EPCA Has Long Been Understood To Preempt Only A Narrow Range Of State And Local Laws.

For decades, states, localities, and the federal government shared a common—and narrow—understanding of EPCA preemption. That shared understanding is reflected in the myriad federal laws supporting state and local energy policies, all of which are incompatible with Plaintiffs' expansive view of EPCA preemption.

### A.    The federal government, states, and localities have collectively understood that EPCA preempts only laws that target products' energy performance.

EPCA's implementing agency (DOE) has frequently interpreted the statute to preempt only a narrow subset of state energy regulations. In 1982, DOE advised that "only State regulations that are appliance *efficiency* standards" or that "established the energy efficiency of a particular appliance" were preempted, not "regulations that have only a peripheral effect on the energy efficiency of a covered product." 47 Fed. Reg. 14424, 14456 (Apr. 2, 1982). DOE explained that EPCA would preempt, for example, a "[p]rohibition of hook-ups for appliances with less than a certain efficiency," i.e., less than a specific energy use figure. 47 Fed. Reg. 57198, 57215 (Dec. 22, 1982). But, in contrast, a prohibition on installing a covered product at all in new buildings would *not* be preempted. *See id.* ("Prohibition against

placing oversized furnaces and air conditioners in new buildings, would not be subject to preemption."). The difference between the two is that the latter "does not draw any distinction between products based on their . . . energy use as manufactured" and as defined by EPCA. J.A. 92.

Congress acquiesced in DOE's view of EPCA preemption a few years later in the National Appliance Energy Conservation Act (NAECA), Pub. L. No. 100-12, 101 Stat. 103 (1987). While NAECA changed "the criteria" for DOE preemption *waivers*, H.R. Rep. No. 100-11, at 24 (1987), Congress did not disagree with DOE about what laws were preempted in the first place. To the contrary, NAECA "follow[ed] substantially the preemption requirements in current EPCA" by "continu[ing] the basic concept of preempting State energy efficiency standards," *id.* at 23-24, "as provided under current law," S. Rep. No. 100-6, at 9 (1987). Congress's deliberate choice to maintain the status quo in NAECA reinforces EPCA's narrow preemptive scope. *See Monsalvo v. Bondi*, 145 S. Ct. 1232, 1242 (2025) ("When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' this Court generally presumes the new provision should be understood to work in harmony with what has come before." (quoting *Haig v. Agee*, 453 U.S. 280, 297-98 (1981))).

DOE's own post-NAECA actions confirm as much. Since NAECA's enactment, DOE has continued across administrations to "interpret[] 'regulation

concerning energy use' to be equivalent to 'energy conservation standard,'" and it has emphasized that the preemption provision's title "further clarifies that this section addresses energy conservation standards." 75 Fed. Reg. 59470, 59530 (Sept. 27, 2010); *see, e.g.*, 89 Fed. Reg. 28856, 28865 (Apr. 19, 2024); 85 Fed. Reg. 30878, 30879 (May 21, 2020); 71 Fed. Reg. 12634, 12635 (Mar. 13, 2006). In recent years, moreover, the United States reaffirmed this interpretation and even represented that EPCA does not preempt laws that prohibit gas appliances, explaining that such laws do not undermine the EPCA program.[3] Had Congress intended NAECA to expand EPCA's preemptive scope, then surely DOE would have acknowledged that expansion in the nearly four decades since NAECA was enacted. *See Monsalvo*, 145 S. Ct. at 1242-43 (concluding that Congress acquiesced in longstanding administrative construction based in part on post-enactment governmental conduct).

**B.** **EPCA and related federal laws support a variety of state energy policies, including policies like the City's.**

Further refuting Plaintiffs' claim is the fact that Congress has long supported state energy policies and building codes similar to the City's. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir.

---

[3]    Br. for the U.S. 8-9, 19-21, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. Feb. 2, 2022), ECF No. 33, 2022 WL 433159 ("U.S. *Berkeley* Br."); Br. for the U.S. in Supp. of Pet. for Reh'g 7-13, *Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94 ("U.S. *Berkeley* Reh'g Br."); U.S.'s Statement of Interest 4-6, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-cv-3024 (D. Md. Jan. 17, 2025), ECF No. 30 ("U.S. *Montgomery* Br.").

2012) (rejecting preemption theory based in part on "evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role" (internal quotation marks and citation omitted)).  In EPCA itself, for example, Congress declared its support for "the development and implementation by States of laws, policies, programs, and procedures to conserve and to improve efficiency in the use of energy."  Pub. L. No. 94-163, § 361(a)(1), 89 Stat. 871, 932 (1975).  Likewise, Congress commanded that "all sectors of our Nation's economy must begin immediately to significantly reduce the demand for nonrenewable energy resources such as oil and natural gas."  National Energy Conservation and Policy Act, Pub. L. No. 95-619, § 102(a)(3), 92 Stat. 3206, 3209 (1978) (amending EPCA).

To that end, EPCA supports states and localities by:

- providing financial and technical support to create energy conservation plans, which are comprehensive policy plans to reduce energy consumption and improve energy efficiency, 42 U.S.C. §§ 6321-6325, and may include "programs to promote energy efficiency in residential housing" and "programs for the development of building retrofit standards and regulations," *id.* § 6322(d)(8), (14);

- funding "renewable-resource energy measure[s]," *id.* § 6325(e), defined to include measures for pre-1976 buildings that "involve changing, in whole or in part, the fuel or source of the energy used to meet the requirements of such

9

building or plant from a depletable source of energy to a nondepletable source of energy," *id.* § 6321(c)(7)(A);

- allocating funds "[i]f [DOE] determines that a State has demonstrated a commitment to improving the energy efficiency of buildings," *id.* § 6323(e);

- and providing financial and technical support for state and local plans to reduce fossil fuel dependency and energy consumption of public schools, public hospitals, buildings owned by local governments, and public care institutions, *id.* §§ 6371-6371k, 6372-6372i.

Congress's post-EPCA enactments reinforce the point. In 1976, for instance, Congress directed DOE to help states develop building codes with an eye toward "stimulation of use of nondepletable sources of energy." Energy Conservation Standards for New Buildings Act, Pub. L. No. 94-385, § 310, 90 Stat. 1125, 1149 (1976). Congress recognized that "State and local building codes . . . can provide an existing means by which to assure, . . . with a minimum of Federal interference in State and local transactions, that newly constructed buildings contain adequate energy conservation features." 42 U.S.C. § 6831(4). So Congress today provides financial and technical support for states to create and implement building codes that conserve energy. *Id.* §§ 6833, 6836, 6838. And so, EPCA has always coexisted with extensive state regulation of buildings' energy consumption. David Santana

10

Ortiz & Mark Allen Bernstein, *Measures of Residential Energy Consumption and Their Relationships to DOE Policy* 29, 61 (1999), https://tinyurl.com/2exjm4s3.

Recently in 2022, the Inflation Reduction Act (IRA) directed DOE to issue grants to states and localities—pursuant to its authority under EPCA—to adopt "building energy code[s]" that "meet[] or exceed[] the zero energy provisions in the 2021 International Energy Conservation Code [IECC]." Pub. L. No. 117-169, §§ 50131(a)(2), (c)(1), 136 Stat. 1818, 2042 (2022) (citing 42 U.S.C. §§ 6321-6326). According to DOE, "[a]pproaches to comply with the IECC requirements include all-electric buildings." U.S. *Montgomery Br.* 9. Thus, pursuant to the IRA, DOE awarded Montgomery County, Maryland, a grant to pursue a building code requiring "all-electric buildings." *Id.*

This carefully reticulated, cooperative federalism regime repudiates Plaintiffs' sweeping view of EPCA preemption. When, as here, Congress "encourage[s]" state policies by providing "federal funding" or "technical assistance," "it just makes good sense to reject" an interpretation of a statute that would preempt those policies. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 665-67 (1995); *see CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014) (rejecting preemption where federal law left "many areas of state law untouched"); *Coal. for Competitive Elec. v. Zibelman*, 906 F.3d 41, 50 (2d Cir. 2018) (rejecting preemption where "coordinate state and federal efforts exist

within a complementary administrative framework" (citation omitted)).  Indeed, at the very least, Congress's continued efforts to support and preserve complimentary state building energy codes—including codes that shift buildings' reliance on fossil fuels to renewable energy—makes plain that Congress did *not* "decide that energy policy is a national issue."  Pls.' Br. 2.

## II.    Plaintiffs' Interpretation Is Wrong And Would Upset The Settled Understanding Of EPCA Preemption.

Plaintiffs' preemption theory rests on a fundamental misreading of EPCA that departs from settled understandings.  *See United States v. Miller*, 604 U.S. 518, 531 (2025) (rejecting interpretation that "would upend decades of practice").  Plaintiffs wrongly argue that the City's law is preempted because, by prohibiting gas appliances in new construction, it "effectively sets" an "energy use" standard of "zero" for gas appliances.  Pls.' Br. 17.

That theory ignores EPCA's definition of "energy use," which the Court must follow.  *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018).  EPCA defines "energy use" as a fixed "representative" figure "determined" through premarket "test procedures."  42 U.S.C. §§ 6293(b)(3), 6291(4).  The "energy use" figure assigned to a product does not change based on what happens once the product enters the market.  For example, if a gas oven is manufactured, tested, and labeled in New Jersey, its energy use is not magically reset to 0 British thermal units when it goes through the Holland Tunnel.  Plaintiffs' contrary theory—conflating EPCA's

concept of "energy use" with their own concept of actual energy consumption—would improperly preempt any state law affecting whether or if EPCA-covered appliances can be used. Nothing in the text or structure of EPCA supports that anomalous position.

Moreover, Plaintiffs' arguments about "zero energy use" are misguided because there is no such thing as "zero energy use" under EPCA. "Energy use" is "determined" "during a representative average *use* cycle or period of *use*," so the product must operate to determine the "quantity of energy directly consumed." *Id.* §§ 6293(b)(3), 6291(4) (emphases added). No product can operate for a period or cycle on zero energy. Put differently, "energy use" must be a "quantity," *id.* § 6291(4), but "zero" is "the absence of a measurable quantity," *Zero*, Merriam-Webster Dictionary, https://tinyurl.com/4snaz7a3 (last visited Nov. 6, 2025). Thus, a ruling that the City's law allows only gas appliances with "zero energy use" would fundamentally misunderstand the meaning of "energy use."

Plaintiffs' atextual and illogical theory also lacks historical support. Indeed, Plaintiffs cannot point to any source in EPCA's history, besides one aberrational case from the 2020s (*Berkeley*), in which someone read EPCA as they do. That is a tell-tale sign that Plaintiffs' interpretation is wrong. *See Mellouli v. Lynch*, 575 U.S. 798, 813 (2015) (recognizing that when a "sweeping interpretation departs so

13

sharply from the statute's text and history," "it cannot be considered a permissible reading").

The United States' newfound position fares no better.  Contradicting its prior construction of EPCA preemption across administrations, the United States now argues that EPCA preempts regulations that prohibit covered products or prevent them from being used.  U.S. Br. 8, 10.  The United States' new position deserves no weight for at least four reasons.  *See Wyeth v. Levine*, 555 U.S. 555, 577 (2009) ("The weight we accord the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness.").

*First*, the United States misreads EPCA.  It argues that (1) "concerning" necessarily means "relating to," and (2) "relating to" always has a broadening effect. U.S. Br. 11-12, 15-16, 26.  Neither proposition is correct.

For one, "concerning" can also mean "about," "of," "regarding," or "in reference to."  *Webster's Ninth New Collegiate Dictionary* 272 (1985); *The Random House Dictionary of the English Language* 423 (2d ed. 1987); *The American Heritage College Dictionary* 288 (3d ed. 1993).  And in common usage, "concerning" is often used to point to a subject—in the sense of what something is "about."  *E.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 34 F.4th 1, 10 (D.C. Cir. 2022); *Corley v. DOJ*, 998 F.3d 981, 987 (D.C. Cir. 2021); *see Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 497-98 (2d Cir. 2023) (holding that a federal statute

14

preempting state-law claims "about" certain enumerated subjects covered a claim that "concern[ed]" those subjects).

In contrast, "relating to" is often used to indicate "a relationship or nexus of some kind." *Dubin v. United States*, 599 U.S. 110, 119 (2023). To see the difference, consider an illustration previously provided by the United States: No one would say that World War II "concerned" a beach in Normandy, even though it undoubtedly "related to" a beach in Normandy. *See* Br. for the U.S. & FTC 10, *Rail Freight*, Nos. 21-7093, 21-7095 (D.C. Cir. Dec. 22, 2021), 2021 WL 6091019. Thus, "concerning" is often used in a narrower way than "relating to." *Id.*; U.S. *Montgomery* Br. 13-14. That is particularly true in the context of EPCA, where Congress used "related to" in another preemption provision, *see* 49 U.S.C. § 32919(a), thus confirming that it intended "concerning" to signal a narrower preemptive reach for present purposes, *see Cable Television Ass'n of N.Y. v. Finneran*, 954 F.2d 91, 101-02 (2d Cir. 1992) (reasoning that Congress's choice of other terms besides "relate to" expresses an intent for a preemption provision to be interpreted more narrowly); *Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 7-8 (1st Cir. 2022) (similar); *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 709 (D.C. Cir. 2024) (presuming Congress acts intentionally when using language in one provision but not another, including when the provisions "were enacted at different times").

Several decisions illustrate the distinction between "concerning" and "relating to." In *United States v. Halseth*, 342 U.S. 277 (1952), for example, the Supreme Court held that a statute criminalizing mailing a letter "concerning any lottery" encompassed only "an existing, going lottery" and thus did not cover "the mailing of gambling paraphernalia that may be used to set up a lottery"—even though the latter plainly *relates to* "any lottery," *id.* at 279-80. Similarly, the Third Circuit, in an opinion joined by then-Judge Alito, concluded that a statute governing bankruptcy cases "concerning a railroad" did not cover petitions filed by "former railroads seeking bankruptcy adjustment of assets and liabilities obtained while they were railroads"—even though such petitions plainly *relate to* "a railroad." *In re Pittsburgh & Lake Erie Props., Inc.*, 290 F.3d 516, 519 (3d Cir. 2002). And the D.C. Circuit construed "discussion or agreement [that] concerned an interline movement of the rail carrier" to refer to discussions or agreements "about" "shared interline traffic" but not discussions or agreements about single-line traffic—even though the latter discussions and agreements may *relate to* "an interline movement." *Rail Freight*, 34 F.4th at 10-11.

But even if "concerning" meant "relating to" in EPCA, that phrase "is not a self-evident guide to the precise extent of Congress's preemptive intent." *In re WTC Disaster Site*, 414 F.3d 352, 376 (2d Cir. 2005). "Relating to" is "indeterminate," so the Court must use the rest of the statute and its history to determine what

16

regulations concern energy use. *Krasner v. Cedar Realty Tr., Inc.*, 86 F.4th 522, 529 (2d Cir. 2023); *see Mellouli*, 575 U.S. at 808-13 & nn.9-11 (construing "relating to" narrowly to "require[] a direct link" based on structure, context, and history). The rest of the statute and its history indicate that EPCA does not preempt any law that affects covered products' actual usage. Therefore, the United States is wrong about "concerning" twice over: (1) it does not always mean "relating to," and even if it did, (2) "relating to" is neither determinative nor inherently broad. *See United States v. Omotayo*, 132 F.4th 181, 193 (2d Cir. 2025) (recognizing that "in relation to" "could be read broadly or narrowly").

*Second*, the United States' current position does not reflect a consistent or reasoned position. *See Wyeth*, 555 U.S. at 577-78 (giving FDA's views little weight for this reason). Far from it. The United States' new position effectively reverses DOE's longstanding views without reasoned explanation and is diametrically opposed to arguments it has made in three other briefs. *See* note 3, *supra*. Worse, the United States shows no awareness of many of DOE's past pronouncements on EPCA preemption, *e.g.*, 75 Fed. Reg. 59470, 59530 (Sept. 27, 2010), or of DOE's statutorily mandated programs supporting the types of state and local laws that its new position threatens, Argument § I.B, *supra*.

The only explanation the United States gives for its reversal is that it found the *Berkeley* panel opinion "persuasive." U.S. Br. 2 n.1. But in *Berkeley*, the United

States supported a petition for rehearing en banc, extensively explaining why the panel opinion erred. U.S. *Berkeley* Reh'g Br. 1-2, 11-22. Then, earlier this year, the United States urged a court not to follow *Berkeley*'s "erroneous decision." U.S. *Montgomery* Br. 11-12. The existence of a decision that the United States itself described as "erroneous" only a few months ago is hardly a reasoned explanation for such a radical shift in position. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("The notion that FIFRA contains a nonambiguous command to preempt the types of tort claims that parallel FIFRA's misbranding requirements is particularly dubious given that just five years ago the United States advocated the interpretation that we adopt today.").

*Third*, the United States' concerns over how the City's law or similar laws may affect the EPCA program, U.S. Br. 28-31, are unsupported and misguided. To start, the City's law is already in effect as to some buildings. J.A. 81 n.3. Yet neither the United States nor Plaintiffs point to any evidence that manufacturers are being forced to change the design of their products or are unable to comply with DOE's energy conservation standards. What is more, several Amici are defending against similar EPCA preemption claims, and plaintiffs across those cases have not been able to produce such evidence either. Additionally, the United States overstates EPCA's focus on uniformity. Congress was concerned with one type of "patchwork": a patchwork of "State energy efficiency standards." H.R. Rep. No.

100-11, at 24.  Any other "patchwork," such as diverse health and safety regulations across the states, is simply an inherent part of our federalist system.  *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) (reaffirming the principles that states may experiment with policies sensitive to local needs and may differ in their policy choices).

Nor does it follow that building electrification laws frustrate DOE's ability to administer energy conservation standards.  As the United States admits, such standards "are primarily performance-based" and fuel agnostic.  U.S. Br. 29.  But the City's law does not require a certain performance level from any appliances; it instead focuses on fuel type in buildings.  Yet EPCA takes no position on what types of fuel an appliance can use—and certainly no position on what types of fuel *buildings* can use.  Accordingly, and as the United States previously explained, laws like the City's do not affect DOE's administration of EPCA.  *See* U.S. *Berkeley* Br. 19-21; U.S. *Montgomery* Br. 8.  In fact, electric appliances must comply with the applicable energy conservation standards, and nothing in the City's law would impede that requirement.  *See, e.g.*, 10 C.F.R. § 430.32(c), (d), (j) (establishing standards for electric heat pumps, water heaters, and stoves, respectively).

*Fourth*, the United States' new position fundamentally revises EPCA and represents the sort of unprecedented intrusion into traditionally state domains that warrants strong judicial skepticism.  *See Biden v. Nebraska*, 600 U.S. 477, 501-02

19

(2023); *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764-65 (2021) (per curiam). Until now, DOE interpreted its regulatory authority and EPCA's preemptive scope to be coterminous: EPCA or DOE sets energy conservation standards, and states cannot make their own, different energy conservation standards for those same products. U.S. *Berkeley* Reh'g Br. 6-7. But now, the United States suggests that once EPCA or DOE sets an energy conservation standard, that standard preempts an array of other state and local laws far beyond state standards or their equivalents. The United States' new position thus transforms EPCA from a program focused on improving appliances' efficiency into a deregulatory weapon of sweeping scope; and it transforms DOE from an agency that regulates one aspect of appliances into the exclusive arbiter of all aspects of appliance regulation.

That aggrandizement violates core principles that protect the states and the people from overreach by federal agencies. For one, Congress does not confer massive amounts of agency authority through minor means. *Nebraska*, 600 U.S. at 501-02. It strains text and reason to conclude that Congress empowered DOE to nullify wide areas of state and local authority through the word "concerning." For another, "when a federal agency lacks the power to regulate, it also lacks the power to preempt." *N.Y. State Telecomms. Ass'n v. James*, 101 F.4th 135, 157 (2d Cir.), *cert. denied*, 145 S. Ct. 984 (2024). Yet, DOE's new interpretation of EPCA creates

a serious mismatch between its regulatory authority under EPCA and EPCA's preemptive scope.

## III. Upsetting The Understanding Of EPCA Would Have Severe Consequences For States And Localities.

### A. Plaintiffs' interpretation would threaten to preempt a startling swath of laws.

Adopting Plaintiffs' view of EPCA could invite litigation against any state or local law that affects whether covered products can be used on the misguided theory that they "set[]" an appliance's "energy use to zero." Pls.' Br. 1. That is reason enough to reject Plaintiffs' position. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (declining to adopt construction that would risk "upsetting reliance interests"); *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (rejecting an "expansive interpretation" that "would lead to staggering results").

A few examples illustrate the point. Start with laws regulating household products to ensure consumer safety. Because EPCA covers home heating equipment,[4] Plaintiffs' theory could call into question longstanding state laws banning fossil-fuel-burning space heaters,[5] which pose a deadly risk of fire and

---

[4]     *See* 42 U.S.C. § 6292(a)(9) (listing "[d]irect heating equipment" as a covered product); 10 C.F.R. § 430.2 (defining "[d]irect heating equipment" as "vented home heating equipment and unvented home heating equipment").

[5]     *E.g.*, Cal. Health & Safety Code § 19881(a) (unvented natural gas heaters) 425 Ill. Comp. Stat. Ann. §§ 65/8, 65/9 (kerosene heaters); N.Y. Real Prop. Law § 239-e (kerosene heaters).

carbon-monoxide poisoning,[6] none of which DOE has ever objected to before.[7]

Likewise, because EPCA covers various types of lightbulbs,[8] Plaintiffs' theory could also call into question state laws banning lightbulbs that contain mercury,[9] even though such laws have nothing to do with energy efficiency regulation.[10]

Next, Plaintiffs' position could affect state laws regulating the use of covered products in certain buildings.  J.A. 93.[11]  Public universities, for instance, usually ban a laundry list of items in student housing that could qualify as covered products under EPCA.  *E.g.*, Ohio Admin. Code § 3341-2-15(F)(4).  Yet Plaintiffs' theory in this case leads to the untenable conclusion that universities set a performance

---

[6]     FDNY Found., *Don't Use Kerosene or Propane Space Heaters*, https://tinyurl.com/497kefvd (last visited Nov. 6, 2025).

[7]     *See* DOE, *Small Space Heaters*, https://tinyurl.com/37byajyc (last visited Nov. 6, 2025) (recognizing that "[m]ost states have banned unvented kerosene heaters for use in the home.  California, and some other cities and counties, have banned the use of unvented natural gas heaters in the home").

[8]     *See* 42 U.S.C. § 6292(a)(14) (listing "[g]eneral service fluorescent lamps" and "general service incandescent lamps" as covered products); 10 C.F.R. § 430.2 (defining "[g]eneral service fluorescent lamps" and "general service incandescent lamps").

[9]     *E.g.*, R.I. Gen. Laws §§ 23-24.9-2, 23-24.9-6.1; Minn. Stat. § 116.92(7b).

[10]     *See* Vt. Dep't of Envtl. Conserv., *10 VSA §7152(a) Sale of Mercury-Containing Lamps Final Determination Notice*, https://tinyurl.com/343fycrj (last visited Nov. 6, 2025).

[11]     *See also*, *e.g.*, L.A. Mun. Code § 57.603.10.2 (prohibiting certain heating and lighting products in industrial buildings); Tucson Code of Ordinances § 27-95(4) (banning use or installation of non-recirculating evaporative-cooling systems in new construction).

standard of zero energy use when they tell freshmen not to bring their own microwaves—as well as the equally untenable conclusion that college kids can come to court and claim a "right" to use any covered appliance in dorms.  Pls.' Br. 2.

Plaintiffs' interpretation could also threaten state laws regulating zoning and products liability.  Zoning laws, for example, can restrict the use of industrial-grade appliances in residential areas or otherwise limit whether owners may install appliances.  *See, e.g.*, *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 421 (4th Cir. 2013) ("[T]he power to impose a zoning requirement includes the power to preclude any proposed usage of the zoned area that cannot comply with such requirement."); *Melillo v. Brais*, No. 3:17-cv-520, 2019 WL 1118091, at *1-2 (D. Conn. Mar. 11, 2019) (rejecting constitutional claims arising from a town ordering removal of appliances from apartments in a detached garage for noncompliance with zoning regulations).  And manufacturers have gone so far as to argue that ordinary design-defect and consumer-protection claims are preempted by EPCA under Plaintiffs' theory.  *E.g.*, Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss 3-4, *Sherzai v. LG Elecs. USA, Inc.*, No. 2:23-cv-429 (E.D. Cal. May 12, 2023), ECF No. 14-1; Def.'s Mem. of L. in Supp. of Mot. to Dismiss 3-4, *Hess v. Samsung Elecs. Am., Inc.*, 3:23-cv-50106 (N.D. Ill. June 5, 2023), ECF No. 19.  Plaintiffs' expansive theory, if accepted, could create a de facto immunity

23

from zoning laws and products-liability litigation that Congress could not possibly have intended.

Still further, Plaintiffs' interpretation could also obstruct laws that seek to achieve state and local emission- and air-pollution-related goals. Buildings are responsible for 35% of greenhouse gas emissions. Susannah Shoemaker, *NREL Researchers Reveal How Buildings Across United States Do—and Could—Use Energy*, Nat'l Renewable Energy Lab. (Sept. 14, 2023), https://tinyurl.com/3vdjnr5x. Buildings' combustion of fossil fuels likewise releases various air pollutants such as nitrogen oxides, sulfur dioxide, volatile organic compounds, and ammonia. Brady Seals & Leah Louis-Prescott, *Uncovering the Deadly Toll of Air Pollution From Buildings*, RMI (May 5, 2021), https://tinyurl.com/4bte6cxp. Because buildings account for a large portion of emissions and pollution, many jurisdictions have taken decisive action on buildings' combustion of fossil fuels (the primary cause of site greenhouse gas emissions and other air pollution). *See, e.g.*, D.C. Council Comm. on Transp. & Env't, *B24-420, the "Clean Energy DC Building Code Amendment Act of 2022"* 1 (June 13, 2022), https://tinyurl.com/yc6aja2z; Gov. Jared Polis, *Colorado Greenhouse Pollution Reduction Roadmap* xiii (Jan. 14, 2021), https://tinyurl.com/4d74x7b5. But Plaintiffs contend that such policy responses are off-limits—never mind that nothing in EPCA clearly precludes them.

24

Rather than confront these disturbing consequences, Plaintiffs urge the Court *not* to consider what laws would be covered by their interpretation. Pls.' Br. 48. But the Court's "task is to 'identify the domain expressly pre-empted'" by EPCA. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 259 (2013) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)); *see, e.g.*, *Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48, 55-62 (2d Cir. 2006) (interpreting scope of a preemption provision before applying it to state law at issue). "That the statute *would* apply so broadly," under their theory, to potentially preempt the laws identified above (and more) may be "the inescapable conclusion of [Plaintiffs'] position." *Bond v. United States*, 572 U.S. 844, 862 (2014). If it is, the Court should consider those astounding consequences in determining EPCA's true preemptive scope.

### B. Plaintiffs' interpretation lacks clear, administrable rules that states and localities need.

Plaintiffs' interpretation is not just broad—it appears limitless. As Plaintiffs themselves admit, their interpretation is "ill suited to bright-line rules" and will generate "tricky line-drawing problems" in future cases. Pls.' Br. 48. That is all the more reason to reject Plaintiffs' theory. *See Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 126 n.9 (2d Cir. 2021) (avoiding "broad preemption" theories that "lack . . . a limiting principle").

Plaintiffs' efforts to constrain their unbounded theory fail. They first contend that "Congress's intent . . . provides the limiting principle." Pls.' Br. 46. But that

question-begging assertion is no limit at all, especially given that Plaintiffs misunderstand Congress's intent. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 92 (2020) (Thomas, J., concurring) (recognizing that preemption tests based on "generalized notions of congressional purposes" offer "little guidance or predictability" (internal quotation marks and citation omitted)). Equally flawed is Plaintiffs' suggestion that their theory *may* not preempt state regulations "that only incidentally impact covered products' energy consumption" or that "regulate[] where and how that appliance is used." Pls.' Br. 46-47 (internal quotation marks and citation omitted). Plaintiffs offer neither a text-based reason for this distinction nor standards for determining what is an incidental impact or when a regulation is about "where and how [an] appliance is used" versus *whether* it can be used. If anything, this distinction is self-defeating because the City's law simply specifies *where* appliances cannot be installed: in new construction of certain residential buildings.

Plaintiffs' limitless interpretation will create significant problems for states and localities—not to mention courts—which need "workable standards" for preemption. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016). If states and localities can understand the metes and bounds of a preemption provision, then they can make policies that comply with federal law. Legislating with an eye toward clearly demarcated federal law also makes it less likely that governments will later

26

have to defend against preemption challenges. But when the limits of a preemption provision are unclear, as they are under Plaintiffs' interpretation, policymakers are left to stumble in the dark, and government attorneys are left to defend against claims capitalizing on a preemption provision's indeterminacy.

Amici know firsthand that these problems attend Plaintiffs' interpretation. For most of EPCA's history, there were vanishingly few preemption challenges because it was widely understood that EPCA preempted only a narrow slice of laws. But all that changed with *Berkeley*, which unleashed a wave of challenges in which plaintiffs leverage EPCA to attempt to overturn state and local policies they dislike. The effects extend past the courthouse to the statehouse. Opponents of health and environmental policies have used the *Berkeley* opinion to pressure lawmakers to drop consideration of those policies, rather than risk litigation or pursue the costly, timely, and likely unavailing waiver process. *See, e.g.*, David Iaconangelo, *Washington State Hits the Brakes on Landmark Gas Ban*, E&E News (May 25, 2023), https://tinyurl.com/v72nfv2x.

This cannot be what Congress intended. This Court should confine EPCA to its text and traditional understanding by rejecting Plaintiffs' misinterpretation.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK
Principal Deputy Solicitor General

ADAM J. TUETKEN
BRYAN J. LEITCH
Assistant Attorneys General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 442-9807
November 2025                ashwin.phatak@dc.gov

On behalf of:

PHILIP WEISER
*Attorney General*
State of Colorado

WILLIAM TONG
*Attorney General*
State of Connecticut

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

KWAME RAOUL
*Attorney General*
State of Illinois

ANTHONY G. BROWN
*Attorney General*
State of Maryland

ANDREA CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

DANA NESSEL
*Attorney General*
State of Michigan

KEITH ELLISON
*Attorney General*
State of Minnesota

MATTHEW J. PLATKIN
*Attorney General*
State of New Jersey

RAÚL TORREZ
*Attorney General*
State of New Mexico

DAN RAYFIELD
*Attorney General*
State of Oregon

CHARITY R. CLARK
*Attorney General*
State of Vermont

JOHN P. MARKOVS
*County Attorney*
Montgomery County, Maryland

GREGORY T. SMITH
*Village Attorney*
TONY S. FIORETTI
*Assistant Village Attorney*
Village of Oak Park, Illinois

**CERTIFICATE OF FILING AND SERVICE**

I certify that on November 6, 2025, an electronic copy of the foregoing was filed with the Clerk of Court using the electronic filing system and thereby served upon all counsel appearing in this case.

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) because the brief contains 6,271 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK