# 25-977

# United States Court of Appeals
### *for the*
## Second Circuit

ASSOCIATION OF CONTRACTING PLUMBERS OF THE CITY OF NEW YORK, INC.; PLUMBING-HEATING-COOLING CONTRACTORS—NATIONAL ASSOCIATION; PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA; NEW YORK STATE ENERGY COALITION, INC.; PLUMBING FOUNDATION CITY OF NEW YORK, INC.; LICENSED PLUMBING ASSOCIATION OF NEW YORK CITY, INC., d/b/a Master Plumbers Council of the City of New York; and BUILDING INDUSTRY ASSOCIATION OF NEW YORK CITY, INC.,

*Plaintiffs-Appellants,*

– v. –

CITY OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York, No. 1:23-cv-11292,
Hon. Ronnie Abrams, District Judge

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

BRIAN C. BARAN
REICHMAN JORGENSEN LEHMAN
   & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
(202) 894-7310
bbaran@reichmanjorgensen.com

SARAH O. JORGENSEN
REICHMAN JORGENSEN LEHMAN
   & FELDBERG LLP
1201 West Peachtree Street,
   Suite 2300
Atlanta, Georgia 30309
(650) 623-1401
sjorgensen@reichmanjorgensen.com

*Attorneys for Plaintiffs-Appellants*

 CP COUNSEL PRESS    (800) 4-APPEAL • (387285)

## TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 3

  I.  EPCA Preempts the City's Gas Ban. .............................................. 3

    A. Whether under EPCA's plain text or the City's rewrite, the ban is preempted because it effectively caps covered appliances' energy use at zero. ........................................................................ 3

      1. Shifting to a "different regulatory axis" cannot escape the well-established meaning of "concerning." ............................... 4

      2. EPCA's text and amendment history preclude rewriting §6297(c) to preempt "regulations that act as energy conservation standards." ............................................................ 7

      3. Nothing turns on the City's and district court's definition of "energy use." ...................................................................... 14

      4. Circuit precedent forecloses the City's attempt to resurrect the presumption against preemption. ..................................... 17

    B. EPCA's structure, purpose, and history confirm that the City's ban is preempted. ........................................................................ 18

      1. The City cannot account for the building code exception. ......... 18

      2. The City cannot explain away Congress's effort to preserve consumer choice and avoid a burdensome patchwork of standards. ...................................................... 22

      3. Recognizing that the City's ban is preempted would not create an unconstrained right to use appliances free of ordinary health and safety regulations. ................................. 25

    C. The City's argument that the "connection with or reference to" test is not met here ignores the "connection with" prong— which its ban easily satisfies. .................................................... 27

  II. The Ban Does Not Qualify for Any Exception to Preemption.......... 29

CONCLUSION ................................................................................ 30

CERTIFICATE OF COMPLIANCE ...................................................... 31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health,*
    685 F.3d 174 (2d Cir. 2012) ..................................................................... 6

*Air Evac EMS, Inc. v. Cheatham,*
    910 F.3d 751 (4th Cir. 2018) ................................................................ 18

*Am. Trucking Ass'ns v. City of Los Angeles,*
    569 U.S. 641 (2013) ................................................................ 6-7, 23, 29

*Arizona v. United States,*
    567 U.S. 387 (2012) ................................................................ 24

*Bates v. Dow Agrosciences, LLC,*
    544 U.S. 431 (2005) ................................................................ 18

*Bldg. Indus. Ass'n of Wash. v. Wash. State Building Code Council,*
    683 F.3d 1144 (9th Cir. 2012) ........................................................ 19-20

*Buono v. Tyco Fire Prods., LP,*
    78 F.4th 490 (2d Cir. 2023) ............................................................ 17-18

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ............................................... *passim*

*California v. ARC Am. Corp.,*
    490 U.S. 93 (1989) ................................................................ 24

*Carson v. Monsanto Co.,*
    72 F.4th 1261 (11th Cir. 2023) ...................................................... 17-18

*Council for Responsible Nutrition v. James,*
    __ F.4th __, 2025 WL 3165673 (2d Cir. Nov. 13, 2025) ...................... 18

*DCC Propane, LLC v. KMT Enters.,*
    147 F.4th 171 (2d Cir. 2025) ......................................................... 17-18

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan,*
    938 F.3d 246 (5th Cir. 2019) ............................................................ 17

*EagleMed LLC v. Cox,*
    868 F.3d 893 (10th Cir. 2017) ................................................................ 17

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
    541 U.S. 246 (2004) ............................................................... 4, 24

*Gobeille v. Liberty Mut. Ins. Co.,*
    577 U.S. 312 (2016) ................................................................ 28

*Hunter v. McMahon,*
    75 F.4th 62 (2d Cir. 2023) ................................................... 29

*Lamar, Archer & Cofrin, LLP v. Appling,*
    138 S. Ct. 1752 (2018) ........................................................... 5

*Medicaid & Medicare Advantage Prods. Ass'n of P.R.*
    *v. Emanuelli Hernández,*
    58 F.4th 5 (1st Cir. 2023) .................................................... 17

*Metro. Taxicab Bd. of Trade v. City of New York,*
    615 F.3d 152 (2d Cir. 2010) ............................................ 27-28

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ........................................................... 5, 26

*N.Y. State Telecomms. Ass'n v. James,*
    101 F.4th 135 (2d Cir. 2024) ................................................ 24

*Pharm. Care Mgmt. Ass'n v. Wehbi,*
    18 F.4th 956 (8th Cir. 2021) ................................................. 17

*Puerto Rico v. Franklin Cal. Tax-Free Tr.,*
    579 U.S. 115 (2016) ............................................................ 17-18

*Pulsifer v. United States,*
    144 S. Ct. 718 (2024) ............................................................ 22

*Rowe v. N.H. Motor Transp. Ass'n,*
    552 U.S. 364 (2008) ................................................ 6-7, 13, 23, 26, 29

*Shuker v. Smith & Nephew, PLC,*
    885 F.3d 760 (3d Cir. 2018) ................................................. 17

*Tanasi v. New All. Bank*,
786 F.3d 195 (2d Cir. 2015) ............................................................... 18

*United States v. Ionia Mgmt. S.A.*,
555 F.3d 303 (2d Cir. 2009) ............................................................... 29

*Van Buren v. United States*,
141 S. Ct. 1648 (2021) ........................................................................ 11

*Wos v. E.M.A. ex rel. Johnson*,
568 U.S. 627 (2013) ....................................................................... 7, 14

*Ye v. GlobalTranz Enters.*,
74 F.4th 453 (7th Cir. 2023) .............................................................. 17

## Statutes

Energy Policy and Conservation Act of 1975,
42 U.S.C. §§ 6201-6422 ............................................................ *passim*

§6291(4) ............................................................................................ 8, 14

§6291(6) ..................................................................................... 3, 5, 8, 11

§6291(6)(A) ............................................................................................ 9

§6291(6)(B) .......................................................................................... 10

§6292(a)(1) ........................................................................................... 26

§6293(b)(3) ........................................................................................... 15

§6294(a)(2)(I), (a)(3) ........................................................................... 15

§6295.......................................................................................................8

§6295(o)(4) ..................................................................................... 22, 24

§6295(q)(1) ........................................................................................... 24

§6295(q)(1)(A) ..................................................................................... 12

§6297(c)............................................................................................ *passim*

§6297(c)-(f) ............................................................................................. 7

iv

§6297(d) ............................................................................22-23

§6297(d)(3) ............................................................................ 21

§6297(d)(4) ...................................................................... 22, 24

§6297(f)(3) ................................................................ 16, 18-21

§6297(g) ................................................................................ 15

Energy Policy and Conservation Act,
Pub. L. No. 94-163, 89 Stat. 871 (1975) .......................... 8, 11

§321(a)(6)(A) ......................................................................... 11

§327(a)(2) ................................................................................ 8

## Ordinances

N.Y.C. Admin. Code §24-168 ................................................. 27

N.Y.C. Admin. Code §24-168.1 .............................................. 27

N.Y.C. Admin. Code §27-2034 ............................................... 26

N.Y.C. Admin. Code §27-2035 ............................................... 26

## Other Authorities

Energy Audits,
42 Fed. Reg. 20,012 (Apr. 15, 1977) (proposed rule) ......... 15

Energy Audits,
42 Fed. Reg. 33,158 (June 29, 1977) ................................... 15

## INTRODUCTION

New York City's concessions resolve this case. The City concedes that Local Law 154 effectively bans covered gas appliances from new buildings; by prohibiting combustion, it prohibits them from consuming any energy. It concedes that the Energy Policy and Conservation Act preempts state and local energy conservation standards. So EPCA undisputedly prohibits the City from expressly setting a maximum energy use for gas appliances—whether at zero or any other number. And the City concedes that regulations need not be expressly framed as energy conservation standards to be preempted; at the very least, EPCA also preempts regulations that "effectively impose such standards." City.Br.1.

That all adds up to preemption. Because Local Law 154 effectively caps gas appliances' energy use at zero, it acts as an energy conservation standard. It uses combustion as a proxy for greater-than-zero energy use. And that means the ban is preempted even on the City's and district court's narrow reading of EPCA.

The City's and its amici's attempts to escape that conclusion rest on the claim that the City's gas appliance ban is somehow "fundamentally different" from what EPCA preempts. The City insists that its ban regulates on an "entirely different basis" or "axis" and in a "different sphere" or "domain." But for as long as Congress has been writing preemption provisions like EPCA's, states and local governments have

been trying to evade them with arguments like these. And for just as long, the Supreme Court and this Court have rejected that approach. Case after case holds that preemption turns on what the state or local law does, not how it is framed. States and localities cannot evade express preemption provisions by doing indirectly what they cannot do directly. Shifting the framing, semantics, or regulatory focus cannot circumvent preemption—and neither can reconfiguring the regulatory geometry. Whatever axis or plane Local Law 154 operates on, there is no escaping its practical effect.

The Ninth Circuit applied these well-established principles to hold that EPCA prevents cities from effectively banning covered gas appliances by banning gas piping. *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). Changing the regulatory basis from piping to combustion makes no difference to the preempted effect. The district court's contrary approach rewrote EPCA's preemption provision, misapplied preemption precedent, and would create a circuit split. This Court should reverse.

# ARGUMENT

## I. EPCA Preempts the City's Gas Ban.

### A. Whether under EPCA's plain text or the City's rewrite, the ban is preempted because it effectively caps covered appliances' energy use at zero.

The City concedes that Local Law 154 "effectively prohibits the use of appliances that combust fossil fuels in newly constructed buildings in New York City." City.Br.1. That effect is exactly why EPCA preempts it. By prohibiting covered appliances from combusting fossil fuels, the City's ban effectively regulates the quantity of energy they use. And that is what the City cannot do. EPCA preempts "regulation[s] concerning" covered products' "energy use." 42 U.S.C. §6297(c).[1]

Put another way, the City could not have banned covered gas appliances by expressly "prescrib[ing] … a maximum quantity of energy use" of zero; that would be an "energy conservation standard," §6291(6), and all agree that local energy conservation standards are preempted. Banning combustion gets to the same preempted result just as effectively as expressly setting a standard. Even on the City's too-narrow reading of §6297(c), its ban "effectively impose[s] [an energy conservation] standard[]—whether in form or function." City.Br.1.

In its effort to escape this straightforward application of EPCA's plain text, the City spends the bulk of its brief insisting that this case is about how "energy use" is defined and measured. To no avail. The question in

---

[1] Further statutory references are to 42 U.S.C. unless otherwise noted.

this case is not how to calculate energy use, but rather whether a regulation categorically precluding certain types of appliances from using any energy at all is a regulation concerning their energy use. And the City's only real answer is that its regulation is just "different." That fails to heed the well-established meaning of "concerning" and would impermissibly "engraft" a purpose-based "limiting component" onto the preemption provision. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004); *Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases).

### 1. Shifting to a "different regulatory axis" cannot escape the well-established meaning of "concerning."

The City spends most of its brief hiding from the statutory term "concerning." When it can hide no longer, it attacks a strawman, arguing that the "term is not limitless" and that the Court should "reject uncritical literalism." City.Br.41. No dispute there. Congress's choice of "concerning," like "related to," signals broad but not unlimited preemption. Opening.Br.26-27. And that choice refutes the core of the City's argument: that by regulating in a "different sphere" or "domain," or on a "different axis" or "basis," it has escaped §6297(c)'s preemptive orbit. City.Br.1-2, 13-14, 18, 36, 41, 44.[2]

---

[2] The City declines to rely on or defend the district court's suggestion that "concerning" might be narrower than "related to." City.Br.41. After all, the City conceded below that the terms mean the same thing. JA91. The amici States alone embrace the district court's suggestion.

Start on common ground: The City cannot set energy conservation standards; it cannot "prescribe[] a minimum level of energy efficiency or a maximum quantity of energy use … for a covered product," §6291(6). *See* City.Br.1; JA92. And by using the word "concerning," Congress extended preemption at least to "indirect regulations that do not expressly dictate energy use." City.Br.38. So even on the City's view of the preempted subject matter as limited to appliances' "designed-for level of energy consumption," City.Br.2, Congress's use of "concerning" signals that indirectly regulating that "designed-for level" is just as preempted as doing so directly.

Had the City expressly set an energy conservation standard for a covered gas appliance by prescribing a maximum energy use—whether just below the federal standard, at 0.0001 Btu per year, or at zero—it is undisputed that its law would be preempted. Had the City, instead of regulating manufacturers directly, expressly prohibited the installation or use of any covered gas appliance whose labeled energy use exceeds

---

DC.Br.14-17. But they do not defend its reasoning, address Plaintiffs' response, or confront the relevant cases. *See* Opening.Br.52-57; *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759-60 (2018); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Nor do they address the legal or common dictionary definitions. Opening.Br.23-24 & n.10. Instead, they string together off-point cases, hardly any of which discuss both terms, let alone in the preemption context. Hence the repeated lack of quotation marks around "relate to," DC.Br.16. And amici's own additions of "relate to" invoke its broadest, most literal meaning, *see id.*—which is not how preemption provisions use that term.

5

zero, it is undisputed that its law would be preempted. It follows that achieving the same result indirectly by prohibiting combustion is likewise preempted.

The City resists that conclusion, contending that its regulation is "fundamentally different" because it is facially directed at "the *type* of fuel that the appliance uses," not the number on its energy use label. City.Br.41. By "regulating on an entirely different axis," the City says, it avoided preemption even of indirect regulations. City.Br.44-45.

That argument runs smack into a wall of precedent. State and local governments cannot circumvent preemption just "by shifting their regulatory focus" from one axis to another. *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 652 (2013). As both this Court and the Supreme Court have repeatedly explained, what matters is the law's "practical effect." *See 23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 (2d Cir. 2012) (rejecting the City's argument that its law did not "explicitly" regulate preempted activity because it "ignore[d] the [law's] practical effect"); *see also, e.g.*, *Am. Trucking*, 569 U.S. at 652 (cannot "select[] an indirect but wholly effective means" of achieving a prohibited result); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (cannot "produce[] the very effect that the federal law sought to avoid"). "Pre-emption is not a matter of semantics," and so it cannot be evaded "by resorting to creative statutory interpretation or description at odds with the [challenged law's] intended operation and

effect." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013). Rather, "a proper analysis requires consideration of what the state law in fact does." *Id.* at 637.

Nor does the City's stated aim to "reduce carbon emissions and improve local air quality" protect its ban from preemption, City.Br.1. "Despite the importance of [those] objective[s]," EPCA does not "create[] an exception on that basis." *Rowe*, 552 U.S. at 374. "To the contrary, it explicitly lists a set of exceptions … , but the list says nothing about" emissions or air quality regulations. *Id.*; *see* §6297(c)-(f). So the City's "focus [on] the *reason why* it has" banned gas appliances cannot avoid preemption. *Rowe*, 552 U.S. at 373; D.Ct.Dkt.53 at 23:24-24:2 (City conceding that its purpose is irrelevant).

In short, because the City's ban "effectively prohibits" using covered gas appliances whose labeled energy use exceeds zero, City.Br.1, the ban is preempted no matter which axis it is framed around. "Slice it or dice it any which way," the effect of the City's law intrudes on EPCA's preempted domain, *Am. Trucking*, 569 U.S. at 652.

## 2. EPCA's text and amendment history preclude rewriting §6297(c) to preempt "regulations that act as energy conservation standards."

The City's inability to account for "concerning" even on its narrow reading is reason enough to reverse. But make no mistake: The City's and the district court's view that §6297(c) reaches only "regulations that

7

act as energy conservation standards," JA92, would rewrite the statute and undo Congress's amendments. Opening.Br.28-32.

**a.** Section 6297(c) does not say what the City wants it to say. Here it is once more:

> [E]ffective on the effective date of an **energy conservation standard** established in or prescribed under [§6295] for any covered product, **no State regulation concerning the energy efficiency, energy use**, or water use **of such covered product** shall be effective with respect to such product … .

§6297(c) (emphasis added). Congress did not say "no State regulation that acts as an energy conservation standard," JA92. It did not say "no State regulation that effectively imposes an energy conservation standard," City.Br.1. And it did not use the words "designed-for" or "as designed," City.Br.2, 17, 33. If any of that was what Congress meant, it could have said so. And having said so in 1975—when it preempted only "energy efficiency standard[s]" and "similar requirement[s]"—it certainly knew how to. Energy Policy and Conservation Act, Pub. L. No. 94-163, §327(a)(2), 89 Stat. 871, 926-27 (1975); Opening.Br.31-32.

What Congress did say refutes the City's reading. Congress provided different definitions for "energy conservation standard" and "energy use." §6291(4), (6). So those terms are not "interchangeable." *Cal. Rest.*, 89 F.4th at 1105; Opening.Br.29. And Congress distinguished between them in §6297(c). It used "energy conservation standard" as the trigger for preemption and then—in the same sentence—used "regulation

8

concerning energy efficiency, energy use, or water use" to describe what is preempted. §6297(c). Congress perhaps signaled that "energy conservation standards" were a central concern by naming them in the title. But by choosing different language for the operative text rather than repeating that term, Congress confirmed that energy conservation standards were not its sole concern—and not its preferred definition of the preempted subject matter. *Contra* City.Br.22-23, 33-34.

The City brushes off this problem, suggesting that "[a]t most, this drafting choice suggests that a state regulation need not be expressly framed as an energy conservation standard to be preempted." City.Br.33. Again, Congress could have said that in any number of ways using the term "energy conservation standard," but it did not.

The City also suggests that given this "drafting choice," "it may be enough" for preemption "that the regulation concerns one of the measures that define [an energy conservation] standard." City.Br.33. But the City never explains what that means. Energy conservation standards do not combine those measures; they set a minimum energy efficiency *or* a maximum energy use *or* a maximum water use. §6291(6)(A); City.Br.18-19. Why, then, would Congress need to mention the individual metrics to convey the point that one is enough for preemption? The City does not say. And if what the City has in mind is something short of an energy conservation standard, then how does it get from there to its view that

9

Congress preempted only "regulations that function as energy conservation standards," City.Br.24?

At bottom, the City's view is that because "energy use," "energy efficiency," and "water use" are all related to "energy conservation standard," Congress must have just "broke[n] 'energy conservation standard' down into its component parts when defining the scope of preemption." City.Br.33. But it does not explain why, if Congress was merely deconstructing the definition of "energy conservation standard," it left out the fourth part: "a design requirement." §6291(6)(B). Nor can it explain what the purported deconstruction is supposed to have accomplished. Why, if Congress wanted "energy conservation standard" to define the preemptive scope, didn't it just say that? The City's deconstruction theory provides no answer.

**b.** The City's attempt to explain away §6297(c)'s amendment history suffers from the same problem. Recall that Congress excised the term "energy efficiency standard" from the earlier preemption provision and—instead of swapping in its successor, "energy conservation standard"—expanded the provision's scope to "regulation[s] concerning … energy use." Opening.Br.31-32. The City turns again to its deconstruction theory to explain why it thinks the amendment made no substantive difference. City.Br.26. But that theory does not account for the change in language any better than it accounts for the text as it reads now.

10

The City seems to think the difference between the old term "energy efficiency standard" and the current term "energy conservation standard" necessitated the deconstruction. City.Br.26. True, §6291(6) originally defined "energy efficiency standard" and required such a standard to "prescribe[] a minimum level of energy efficiency," *see* EPCA §321(a)(6)(A), 89 Stat. at 917, whereas the switch to "energy conservation standard" added the "energy use" option, §6291(6). But why would that stop Congress from simply swapping in the new, broader term in the preemption provision, just as it did in §6291(6)'s definition and throughout the statute? There was no point removing the defined term and instead "list[ing] the three available metrics" for federal standards in §6297(c) if Congress wanted to convey that nothing had changed other than §6291(6)'s new definition.

It follows that Congress intended to do something beyond replacing "energy efficiency standard" with "energy conservation standard" in §6297(c). And that leaves the City without any way to overcome the presumption that "[w]hen Congress amends legislation, … it intends the change to have real and substantial effect." *Van Buren v. United States*, 141 S. Ct. 1648, 1660-61 (2021) (attribution omitted).

**c.** The statutory structure confirms the point. If "energy efficiency, energy use, or water use" were simply another way to say "energy conservation standard" such that preemption ended at the factory door, City.Br.33; JA92-94, the building code exception, waiver provision, and

11

Congress's choice of "concerning" in §6297(c) would "make little sense." *See Cal. Rest.*, 89 F.4th at 1101-04; Opening.Br.36-46. Instead, the statute's repeated indications that Congress cared about covered appliances' entire lifecycle show that EPCA's preemptive scope extends to regulations concerning appliances' energy use in the real world—not just those that "function" as "energy conservation standards" before a product is marketed. *See* Opening.Br.33-34; *infra* pp.18-24.

All in all, Congress easily could have, but did not, use "energy conservation standard" to define the preempted subject matter. Instead, Congress broadly preempted "any" local "regulation concerning … energy use." Courts must "presume that Congress means what it says" and cannot "simply reconfigure the statute to fit the [City's] needs." *Cal. Rest.*, 89 F.4th at 1105.

**d.** Anyhow, the City's ban would be preempted even under its narrow view. As discussed, it effectively imposes an energy conservation standard: the maximum energy use for all types of covered gas appliances is zero. *Supra* pp.3-7. That is a "limit[] on the quantity of energy that [gas] appliances may be designed and manufactured to consume," City.Br.5. That the limit applies only to gas appliances does not make it any less a standard. §6295(q)(1)(A) (requiring separate standards for appliances using "different kind[s] of energy").

The City's ban also burdens the design and manufacturing decisions that the City admits Congress wanted to protect. *See* Opening.Br.39-41;

12

City.Br.37, 40. To continue competing in the New York City market for new construction, gas appliance manufacturers must redesign their products to use electricity. And manufacturers already offering both gas and electric appliances must account for the ban—plus the broader patchwork the City's interpretation would enable—when making supply, manufacturing, marketing, and distribution decisions.

The City's answer is to move the goalposts. Now it says design and manufacturing burdens don't matter unless they force "manufacturers to redesign their *existing* products" to meet different standards. City.Br.44 (emphasis added). Pushing manufacturers "to develop and market additional products" does not count. *Id.* By that logic, even a mine-run, nonzero standard would not implicate Congress's concern. Manufacturers whose products match federal standards would not have to redesign those existing products if the City set a stricter standard; they would just have good reason "to develop and market additional products" satisfying the City's standard. *Id.* The manufacturers could continue selling their original products elsewhere without "alter[ing] the energy use or energy efficiency of [those products] in any way." *Id.*

At the end of the day, the City's position would "produce the very effect that the federal law sought to avoid," *Rowe*, 552 U.S. at 371-72 (cleaned up). The City admits that Congress updated the preemption provision "[t]o ensure that there would no longer be a patchwork of differing State regulations." City.Br.7 (cleaned up). Allowing the City's

13

ban would enable just such a patchwork. The City's insistence otherwise ignores both its law's admitted purpose and "what [its] law in fact does." *Wos*, 568 U.S. at 637.

### 3. Nothing turns on the City's and district court's definition of "energy use."

The City wants this case to "hinge[] entirely on" EPCA's definition of "energy use." City.Br.21; *accord* City.Br.12-13, 18-19, 27-32, 44. When in doubt, that is its response to the difficulties with its position: chalk them up to using the wrong definition. But the debate over the definition (and especially what it means by "point of use") is irrelevant; the City's ban is preempted even on its own reading. Its regulation "effectively imposes" an energy conservation standard that caps gas appliances' "designed-for," lab-tested, labeled, and fixed "level of energy consumption" at zero, City.Br.1-2. *See supra* pp.3-7; Opening.Br.33-35.

**a.** To be clear, there is good reason to doubt that when Congress wrote the "energy use" definition in 1975, "point of use" had a "well-established technical meaning" such that it does nothing more than reiterate that "energy use" includes only energy "directly consumed by the appliance." *Contra Cal. Rest.*, 89 F.4th at 1123 (Friedland, J., dissenting from the denial of rehearing en banc). Delete "point of use," and the definition says the same thing: Measure "the quantity of energy directly consumed by a consumer product." §6291(4).

14

Understanding "point of use" to mean the place where an appliance is used is consistent with EPCA's testing and labeling provisions. *Contra* City.Br.20; *Cal. Rest.*, 89 F.4th at 1122 (Friedland, J., dissenting from the denial of rehearing en banc). Appliances are tested at their point of use in a laboratory using methods designed to reflect real-world conditions, §6293(b)(3), and the result goes on the label, §6294(a)(2)(I), (a)(3). That the actual energy use might vary in the real world does not require changing the label. §6297(g).

The City's earliest source for the purported technical meaning is from 1998, decades after Congress used the term. City.Br.28-29. Judge Friedland likewise cited nothing predating EPCA, *see* 89 F.4th at 1123-24 & nn.10-15, and the handful of "examples" from the '70s are no help. A California agency's report that does not use the term "point of use" sheds no light on its meaning, especially when Congress cannot have considered it. *Contra id.* at 1123. And the two mentions from a rulemaking involving a different EPCA provision, *see id.* at 1123-24, use the term colloquially. Although "point of use" appears in passages distinguishing source from site energy, it does so by referring to the place where something happens, not through some special meaning.[3]

---

[3] *See* 42 Fed. Reg. 20,012, 20,013 (Apr. 15, 1977) (proposed rule) (contrasting "trac[ing]" "energy conservation impacts" "back to the original fuel source" with evaluating impacts at "the point of use on site"); 42 Fed. Reg. 33,158, 33,159 (June 29, 1977) ("point of electric power generation" versus "point of use").

15

Moreover, if "point of use" had a technical meaning in this context, one would have expected the Department of Energy to have told the Ninth Circuit about it in either of its briefs. It did not, and neither did anybody else until a group of states changed their mind when advocating for rehearing. *See* Opening.Br.35 n.13.

**b.** The City tries to spin "point of use" as the "linchpin" of the Ninth Circuit's decision and the jumping-off point for a "logical leap." City.Br.30-31. Far from it. The Ninth Circuit's recognition that "EPCA is concerned with the end-user's ability to *use* installed covered products at their intended final destinations" turned also on §6297(f)(3)'s building code exception, which was "[o]f critical importance" to understanding §6297(c)'s scope. *See Cal. Rest.*, 89 F.4th at 1101-02 (panel opinion). It explained that the waiver provision and "concerning" supported the point. *Id.* at 1103-04. And it said nothing about "point of use" when explaining why the text forecloses the view that §6297(c) preempts only energy conservation standards and their equivalents. *Id.* at 1105.

Take out "point of use," and the opinion still holds together. Giving "point of use" (and, in turn, "energy use") the technical meaning the City prefers does not change the reality that text, structure, history, and purpose all suggest that Congress's concern was not confined to the factory floor; it sought to improve appliances' energy use and efficiency in the real world while protecting consumer choice.

16

### 4. Circuit precedent forecloses the City's attempt to resurrect the presumption against preemption.

With EPCA's text against it, the City tries reviving the presumption against preemption. City.Br.16 n.6. That is a nonstarter. The City admits that this Court, following the Supreme Court, has held that "[w]hen a federal law contains an express-preemption clause," courts "do not invoke any presumption against preemption." *DCC Propane, LLC v. KMT Enters.*, 147 F.4th 171, 174 (2d Cir. 2025) (attribution omitted); *accord Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016); *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023).

Nevertheless, the City turns to Third Circuit law to assert that "although a formal presumption may not apply, courts must still 'construe the preempted domain narrowly in deference to state sovereignty.'" City.Br.16 n.6 (attribution omitted). The City forgets that the Third Circuit stands alone in keeping the presumption after the Supreme Court rejected it in *Franklin*. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018) (confining *Franklin* to bankruptcy cases). Every other circuit to consider the issue agrees with this Court that *Franklin* means what it says.[4] There is no presumption,

---

[4] *See Medicaid & Medicare Advantage Prods. Ass'n of P.R. v. Emanuelli Hernández*, 58 F.4th 5, 11-12 & n.5 (1st Cir. 2023); *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 258 (5th Cir. 2019); *Ye v. GlobalTranz Enters.*, 74 F.4th 453, 465 (7th Cir. 2023); *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 967 (8th Cir. 2021); *Cal. Rest.*, 89 F.4th at 1101 (9th Cir.); *EagleMed LLC v. Cox*, 868 F.3d 893, 903 (10th Cir. 2017); *Carson v. Monsanto Co.*, 72 F.4th 1261, 1267

formal or otherwise. Rather, courts must follow the statutory text, which "necessarily contains the best evidence of Congress' preemptive intent." *Franklin*, 579 U.S. at 125. EPCA's plain text ends the inquiry here.[5]

## B. EPCA's structure, purpose, and history confirm that the City's ban is preempted.

### 1. The City cannot account for the building code exception.

The City tries and fails to explain what work §6297(f)(3)'s building code exception does under its interpretation of §6297(c). City.Br.37-40. The City admits that the exception confirms "that the preemption provision may reach indirect regulations that do not expressly dictate energy use." City.Br.38. But its insistence that its ban is not such a regulation leaves it without any coherent account of what regulations would be preempted but for the exception. *See* Opening.Br.36-39.

---

(11th Cir. 2023); *cf. Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 n.1 (4th Cir. 2018).

[5] A panel of this Court recently suggested in a footnote that the presumption still justifies "resolv[ing] [an] ambiguity against preemption." *Council for Responsible Nutrition v. James*, __ F.4th __, 2025 WL 3165673, at \*10 n.8 (2d Cir. Nov. 13, 2025) (citing the Supreme Court's discussion of the pre-*Franklin* presumption in *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005)). There is no ambiguity here. In any event, this Court had already twice applied *Franklin* to hold that "[w]hen a federal law contains an express-preemption clause," no presumption applies. *DCC Propane*, 147 F.4th at 174 (attribution omitted); *Buono*, 78 F.4th at 495 (same); *see also DCC Propane*, 147 F.4th at 181 (determining "the best interpretation of the statutory text" and "reject[ing] the premise that policy considerations can trump" it (cleaned up)). A later panel cannot have overruled those decisions, and so "the rule announced by the first panel" controls in any conflict. *Tanasi v. New All. Bank*, 786 F.3d 195, 200 n.6 (2d Cir. 2015).

As the City recognizes, §6297(f)(3) "allows states and localities to set building-level efficiency standards in their building codes" that incentivize (without requiring) appliances exceeding federal standards. City.Br.37-38. And as the City also recognizes, Congress's decision to include the exception indicates that it understood that those regulations would otherwise be preempted. City.Br.38. The exception thus confirms that Congress was concerned about regulations that reach beyond the factory floor to affect appliances installed in actual buildings. *See Cal. Rest.*, 89 F.4th at 1101. By contrast, had Congress meant to limit §6297(c)'s preemptive scope to regulations changing appliances' as-designed energy use, the exception would make no sense. The City's attempt to make sense of it winds up proving the point.

Plaintiffs previously pointed out that no proponent of any interpretation of §6297(c) that would save the City's ban has been able to show that any regulation would both (i) be preempted by §6297(c) under that interpretation and (ii) qualify for the exception. Opening.Br.38-39. The district court did not even try. The City and two amici do, but they come up empty.

**a.** The City's sole example is the building code from *Building Industry Ass'n of Washington v. Washington State Building Code Council*, 683 F.3d 1144 (9th Cir. 2012), which required "a 15% reduction in new buildings' energy consumption," *id.* at 1149. City.Br.39. There was no dispute that the code would have been preempted but for

19

§6297(f)(3), and the Ninth Circuit held that it satisfied the exception's requirements. *Bldg. Indus.*, 683 F.3d at 1145-49.

Where the City runs into trouble is in attempting to explain why §6297(c) reaches Washington's building code but not the City's gas appliance ban. The City suggests that Washington's code was a regulation concerning covered products' energy use or efficiency under §6297(c) because it "essentially established economic incentives for buildings to install higher-efficiency products." City.Br.39. But the City cannot square that with its and the district court's reading of §6297(c). A mere incentive to install one covered appliance over another does not "function as [an] energy conservation standard[]." City.Br.23; JA92. It may "reduce[] demand for certain products," but it "neither require[s] anything of manufacturers nor constrain[s] their activities." JA93-94. It does not require any product to be redesigned with a different "fixed value" for energy use "as manufactured." JA90, 92. And it leaves manufacturers "subject to a single, nationally uniform set of energy conservation standards"; appliances that meet but do not exceed federal standards are still allowed, just disincentivized. JA94. In short, under the City's reading of §6297(c), Washington's building code would not have been preempted in the first place, leaving §6297(f)(3) with nothing to do.

What's more, the City cannot draw any principled line between "establish[ing] economic incentives" for "higher-efficiency products," City.Br.39, and banning covered products. If merely making covered

20

products less economically attractive triggers preemption, then why wouldn't an outright ban?

Finally, the City suggests that §6297(f)(3) ensures that building codes do not "unduly burden[] product design and manufacturing at the national level." City.Br.40. When that was the standard Congress meant to impose, it said so. §6297(d)(3). Regardless, that point does not help the City. Allowing a patchwork of bans on covered appliances has exactly the effect the City admits Congress wanted to avoid. Opening.Br.41-46.

**b.** The City's amici muster nothing better. Only two address the exception. The Guarini Center describes what the exception allows, but it fails to explain why that would be preempted under its design-or-manufacturing view of §6297(c). Guarini.Br.18-19.

And the Public Health Law Center argues in circles. It says Local Law 154 is neither preempted under §6297(c) nor a building code, but that if it were a building code, it would satisfy the exception—for reasons that boil down to its view that Local Law 154 is not preempted to begin with. *See* PHLC.Br.24-30. It neither argues nor establishes that Local Law 154 (whether in a building code or not) or anything else would both be within §6297(c)'s preemptive scope and exempted by §6297(f)(3).

**c.** The inability to explain what §6297(f)(3) does under a reading of §6297(c) that allows the City's ban is dispositive. That neither the district court nor the City nor its army of amici can give §6297(f)(3) any work to do creates the "kind of superfluity" that, "in and of itself, refutes

21

[their] reading[s]." *See Pulsifer v. United States*, 144 S. Ct. 718, 731-32 (2024).

> **2. The City cannot explain away Congress's effort to preserve consumer choice and avoid a burdensome patchwork of standards.**

In the waiver provision and beyond, Congress signaled that its energy objectives should not come at the expense of consumer choice or leave manufacturers to navigate a patchwork of standards. Opening.Br.39-46. Neither the City's response to the waiver provision nor its account of the legislative history suggests otherwise.

**a.** The City concedes that §6297(d)'s waiver provision reflects that Congress wanted to prevent federal, state, and local governments alike from setting standards that "completely remove product characteristics from the market" and to avoid "a patchwork of competing state and local regulations that would be untenable for appliance manufacturers." City.Br.35-37. So it retreats to its insistence that its ban is just different; it says its ban "affect[s] a covered product's availability on an entirely different basis," City.Br.36, and suggests that a patchwork of appliance bans is not the specific patchwork Congress reacted to, City.Br.36-37.

That misses the point. That the Department can neither set standards nor grant waivers that would make appliance performance characteristics or features unavailable, §§6295(o)(4), 6297(d)(4), confirms that Congress cared about consumers' ability to continue buying and using the kinds of appliances already available. That the City "selected

22

an indirect but wholly effective means" of making covered gas appliances unavailable is no excuse. *Am. Trucking*, 569 U.S. at 652. Its ban has just as "significant [an] impact" on Congress's "pre-emption-related objectives" as an express energy conservation standard would. *Rowe*, 552 U.S. at 371 (cleaned up).

Nor can Congress's stated concern for burdens on "manufacturing, marketing, distribution, sale, or servicing" be dismissed on the ground that some design choices affect servicing. *Contra* City.Br.36-37. A list of actions that happen after a product leaves the factory would be a strange way for Congress to signal that preemption ends where the assembly line does. *Cal. Rest.*, 89 F.4th at 1104.

The City gets one thing right about §6297(d): Congress "ma[de] clear" that the Department could not "authorize standards" through the waiver process "that it could not put in place itself." City.Br.36. Congress did not want the Department to ban types of appliances any more than it wanted state and local governments to do so.

But it does not follow that the scope of preemption matches the Department's regulatory authority. Congress allowed the Department to issue "energy conservation standards," but it defined the preempted subject matter more broadly. *Supra* pp.7-12. The building code exception confirms the point; everyone agrees building codes are within the preempted scope, but the Department cannot promulgate them. Nothing limits Congress to preempting only what it chooses to do at the federal

23

level; it is free to limit the powers of both the states and federal agencies. *See California v. ARC Am. Corp.*, 490 U.S. 93, 100 (1989) ("Congress has the authority, in exercising its Article I powers, to pre-empt state law."); *Arizona v. United States*, 567 U.S. 387, 399 (2012) (same).[6]

**b.** The City turns to EPCA's legislative history to bolster its claim that Congress never intended to preempt more than energy conservation standards applied on the factory floor. City.Br.3-7, 24-25. Legislative history cannot override the text, and in any event, the City's account fails to fully capture Congress's intent.

The City simply ignores the unhelpful parts of the legislative history. It neglects Congress's preference for diverse energy sources and neutral energy consumption objectives. Opening.Br.41-42. It skips past Congress's careful attention to consumer choice. Opening.Br.42-43. And it gives short shrift to the text where Congress acted on those concerns. *See, e.g.*, §6295(o)(4), (q)(1); §6297(d)(4).

The bottom line is that allowing bans like the City's "would undo Congress's carefully calibrated regulatory scheme." *See Engine Mfrs.*, 541 U.S. at 253-55.

---

[6] The amici States' observation that a federal agency "lacks the power to preempt" what it "lacks the power to regulate" misses the mark. *Contra* DC.Br.20 (quoting *N.Y. State Telecomms. Ass'n v. James*, 101 F.4th 135, 157 (2d Cir. 2024)). Agencies are limited to their "congressionally delegated authority." *N.Y. Telecomms.*, 101 F.4th at 155 (attribution omitted). But here, Congress exercised its own power to preempt.

### 3. Recognizing that the City's ban is preempted would not create an unconstrained right to use appliances free of ordinary health and safety regulations.

**a.** Nothing about recognizing that the City's ban is preempted depends on an unlimited "right to use all [covered] appliances." *Contra* City.Br.27, 34, 43. That is a strawman. Nobody is arguing that no regulation can ever limit any individual's use of any covered product under any circumstance. And recognizing that EPCA takes a real-world approach—not one confined to the factory floor—does not compel that conclusion. The City's law is preempted because banning "products that operate on [fossil fuels] 'concerns' the energy use of those products," *Cal. Rest.*, 89 F.4th at 1103, not because it happens to affect the circumstances under which an individual may use a covered product.

Likewise, Plaintiffs have never claimed that Congress's desire to prevent a patchwork requires invalidating all regulations with any effect on appliance energy use, however slight or tangential. But neither was Congress's patchwork concern limited to conflicting standards. *Contra* City.Br.24-25. Instead, Plaintiffs draw the line where Congress drew it— Congress prohibited a patchwork of regulations concerning appliances' energy use, §6297(c). Regulations that only incidentally impact energy use, like ordinary emissions regulations or health- and safety-driven time-and-place restrictions, might contribute at the margin to differing local requirements for appliances. But that is no reason to ignore the significant disruption to Congress's objectives that banning appliances

25

causes. *See Rowe*, 552 U.S. at 375 ("[T]he state laws whose effect is forbidden under federal law are those with a *significant* impact on [the preempted subject matter]." (cleaned up)).

That some line drawing is inevitable is a feature of Congress's use of the word "concerning," not a bug in Plaintiffs' and the Ninth Circuit's reading. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992). No one EPCA case will answer every possible preemption question any more than one ERISA case could.

**b.** Dispensing with the strawman also dispenses with the purportedly absurd results, *see* City.Br.45-46. Because the City and its amici line up their parades of horribles against the backdrop of their caricature, it is no surprise that their concerns are overblown.

The City's parade is illustrative. Most of the fuel-specific regulations the City identifies do not ban the affected appliances. Its restrictions on how and where "gas-fueled space or water heater[s]" can be installed in homes neither prohibit those appliances nor have any apparent relationship to their energy use. *See* N.Y.C. Admin. Code §27-2034 (*e.g.*, prohibiting gas water heaters in bedrooms and requiring heaters to "be rigidly connected to the gas piping"). Gas-fired refrigerators do not appear to be covered products, *see* §6292(a)(1) (identifying only electric refrigerators), and regardless, if the City's required features affect energy use, that effect is likely incidental. *See* N.Y.C. Admin. Code §27-2035. And to take one of amicus WE ACT's examples, the City's restrictions on

26

the grade of heating oil certain boilers can use leave those boilers free to operate with other oils. *See id.* §§24-168, 24-168.1; WE.ACT.Br.17-18.

That leaves the two bans, neither of which is in danger. Section 6297(c) preemption kicks in only when a federal standard does. The City does not identify any federal standards for "oil-fired cooking appliances," and there appear to be none. City.Br.45. And as WE ACT admits, there is no federal standard for indoor kerosene heaters either. WE.ACT.Br.16. Perhaps after nearly four decades under EPCA's 1987 approach to standards, the federal government will suddenly decide to impose standards on these products. And perhaps the City will be unable to distinguish its fire safety measures from its gas appliance ban. But that remote prospect does not show that the sky will fall.

## C. The City's argument that the "connection with or reference to" test is not met here ignores the "connection with" prong—which its ban easily satisfies.

All agree that the "connection with or reference to" test for similar provisions is helpful here. JA91-92; City.Br.41-43. But instead of engaging with Plaintiffs' point that Local Law 154 at least satisfies the "connection with" prong, Opening.Br.49-52, the City sidesteps that half of the test.

The City focuses on the "reference to" prong, which asks "whether the challenged law contains a reference to the preempted subject matter or makes the existence of the preempted subject matter essential to the law's operation." *Metro. Taxicab Bd. of Trade v. City of New York*, 615

27

F.3d 152, 156 (2d Cir. 2010) (cleaned up); *accord Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016). The City argues that its ban "does not reference" the preempted subject matter because it does not "rel[y] on" or "directly reference[]" any "product's energy use or efficiency" and does not make that subject matter "essential to the law's operation." City.Br.42-43 (attribution omitted) (attempting to distinguish *Metropolitan Taxicab*).

It is doubtful that the ban survives the "reference to" prong. Opening.Br.51-52. For gas appliances, combustion is just as good "a proxy for" greater-than-zero energy use as "hybrid" was for "greater fuel efficiency." *Metro. Taxicab*, 615 F.3d at 158.

But even so, the test does not end there: "[C]ourts must still ask whether the law nevertheless contains requirements that amount to connections with the preempted subject matter." *Metro. Taxicab*, 615 F.3d at 156-57 & n.4 (cleaned up). True, the City tosses in a passing mention of one of the ways a statute can have an impermissible connection: "govern[ing] 'a central matter' of the preempted domain." City.Br.42 (quoting *Gobeille*, 577 U.S. at 319-20). But it never applies that concept, let alone tackles the prong's broader inquiry into "the objectives of the [federal] statute" and "the nature of the effect of the state law on" the preempted subject matter. *Gobeille*, 577 U.S. at 320 (attribution omitted).

28

Under the correct standard, the City's ban is preempted for all the reasons discussed. Opening.Br.50-52. It would "have a significant impact" on covered appliances' energy use and "produce[] the very effect that the federal law sought to avoid," *Rowe*, 552 U.S. at 371-72 (cleaned up), by banning appliances because their energy use exceeds zero. That the City avoided explicitly mentioning energy use by shifting its focus to combustion makes no difference. *See Am. Trucking*, 569 U.S. at 652.

## II. The Ban Does Not Qualify for Any Exception to Preemption.

The City does not argue that any exception applies. Opening.Br.57-58. Nor did the district court. JA87-95 (ignoring the exceptions).

Amicus Public Health Law Center stands alone in suggesting that Local Law 154 could have qualified for the building code exception had the City put it in its building code. PHLC.Br.24-30. This Court should not entertain an argument raised for the first time on appeal and only by an amicus. *Hunter v. McMahon*, 75 F.4th 62, 73 n.15 (2d Cir. 2023) (declining to consider alternative grounds for affirmance raised "for the first time on appeal"); *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 310 (2d Cir. 2009) (no need to consider arguments "made only by amici").[7]

***

---

[7] Regardless, the Center's argument fails on its own terms. The Center suggests only that had the City included the ban in its building code, it could have satisfied the exception. PHLC.Br.24-25. Even then, its argument is circular; it boils down to the view that because Local Law 154 does not concern energy use, adding it to an otherwise-compliant building code would make no difference. PHLC.Br.25-30.

29

In the end, the City offers no better reason to create a circuit split than the district court did. The City's ban is a "regulation concerning … the energy use" of covered appliances, and it is therefore preempted.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

*/s/ Sarah O. Jorgensen*

Brian C. Baran
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006
(202) 894-7310
bbaran@reichmanjorgensen.com

Sarah O. Jorgensen
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 West Peachtree Street,
  Suite 2300
Atlanta, GA 30309
(650) 623-1401
sjorgensen@reichmanjorgensen.com

*Attorneys for Plaintiffs-Appellants*

November 20, 2025

30

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 6,989 words.

Dated:  November 20, 2025                          */s/ Sarah O. Jorgensen*
                                                   Sarah O. Jorgensen